Carlos E. Montoto Pratts y otros, apelantes, *v.* Pelayo Lorie y María Velasco, proponentes y apelados; Asociación de Vecinos de University Gardens, apelantes, *v.* Pelayo Lorie y María Velasco, proponentes y apelados; Junta de Planificación, agencia administrativa apelada.

*Números:* AA-95-88, AA-95-93 *Resueltos:* 11 de marzo de 1998

*Manuel Izquierdo Encarnación* y *José Luis Ramos Hernández,* abogados de la parte apelante; *Pelayo Lorie Velasco,* abogado de la parte proponente y apelada; *Wanda Ortiz Rivera* y *César E. Mercado Vega,* abogados de la agencia apelada.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca resolver específicamente cuándo comienza a correr el término para apelar una determinación cuasi legislativa de la Junta de Planificación de Puerto Rico.

Para ello es necesario que armonicemos las disposiciones aplicables de la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 *et seq.*, con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, y el Plan de Reorganización Núm. 1 de la Rama Judicial, aprobado el 28 de julio de 1994 (en adelante Ley de la Judicatura de Puerto Rico de 1994), 4 L.P.R.A. sec. 22 *et seq.* Además, debemos determinar si la Junta de Planificación de Puerto Rico puede considerar una solicitud de enmiendas al mapa de zonificación cuando los proponentes no hayan cumplido con los requisitos dispuestos en el Reglamento de Planificación Núm. 4 de la Junta de Planificación de Puerto Rico, ed. rev., de 16 de septiembre de 1992.

## I

*Hechos*

El 2 de septiembre de 1994 la Junta de Planificación de Puerto Rico (en adelante la Junta) recibió del Lcdo. Pelayo Lorie Velasco y de su señora madre, María Velasco, una solicitud de rezonificación de los solares 331 y 329(b) de la calle Clemson, en la urbanización University Gardens. Plantearon, en lo pertinente, que ambas residencias podían ser utilizadas como locales comerciales. En el caso del solar 331, se proponía establecer una oficina de abogados, mientras que el solar adyacente —el 329(b)— se utilizaría como una *boutique* de ropa de mujer.

En tal solicitud se pedía a la Junta que enmendara la Hoja Núm. 20 del Mapa de Zonificación de San Juan, sección de Río Piedras. Específicamente, se solicitaba el reemplazo de la clasificación de distrito residencial general R-3 de estos solares por las clasificaciones de distrito comercial local (C-1) para el solar 331 y distrito comercial liviano

(CL), o distrito comercial de oficina uno (CO-1), para el solar 329(b).

Los solicitantes, el licenciado Lorie Velasco y la señora Velasco, señalaron que los solares no eran aptos para una clasificación de distrito residencial general R-3, la cual se le impone a los predios utilizados como residencias familiares que mantengan un mínimo de trescientos (300) metros cuadrados dentro de un área de alta densidad poblacional. Indicaron que la existencia de comercios adyacentes a la urbanización University Gardens había destruido el ambiente familiar del área.

Conforme a lo establecido por el Reglamento de Zonificación de Puerto Rico (en adelante el Reglamento), el licenciado Lorie Velasco y la señora Velasco remitieron a la Junta una lista de todos los nombres y las supuestas direcciones de los vecinos en el área radial de sesenta (60) metros de los solares en cuestión que, de acuerdo con lo allí expuesto, fueron notificados de la presentación de la solicitud de rezonificación. Dicha notificación incluía los nombres de las personas interesadas en enmendar el mapa de zonificación y el número de los solares, e indicaba que posteriormente se celebrarían unas vistas públicas para discutir los cambios propuestos.

Al recibir la notificación, varios residentes de la urbanización University Gardens se opusieron al procedimiento y argumentaron que para el 20 de octubre de 1989 ya la Junta había denegado una solicitud de rezonificación similar sobre el solar 331. Enfatizaron que las condiciones existentes en el área no habían sufrido cambio radical alguno desde esa fecha. Finalmente, alegaron que los solicitantes debían demostrar qué tipo de cambio, si alguno, había ocurrido en la urbanización que conllevara una variación del dictamen denegatorio anterior.

El 16 de noviembre de 1994 la Junta publicó en el periódico *El Nuevo Día* el aviso de vistas públicas, de acuerdo con lo exigido por el Reglamento. Dicho anuncio tenía el

propósito de informarle a todo interesado sobre el procedimiento de rezonificación que se estaba llevando a cabo.

Posteriormente, la Junta se comunicó mediante carta con las personas incluidas en la lista sometida por los solicitantes que supuestamente fueron notificadas de la solicitud de rezonificación, es decir, aquellos que residían dentro de los sesenta (60) metros cuadrados de los solares en cuestión. Las direcciones utilizadas por la Junta fueron las mismas que utilizaron los solicitantes al comienzo del procedimiento. La Junta les informó que el 5 de diciembre de 1994 se efectuarían vistas públicas sobre la posible enmienda al mapa de zonificación.

Durante la vista pública, el Oficial Examinador permitió solo a uno de los opositores argumentar oralmente. Esto hizo que la Sra. Margarita Russis de Montoto, el Sr. Jorge C. Muns, la Asociación de Vecinos de University Gardens (apelantes) y el Ing. Juan Meléndez tuviesen que presentar su oposición mediante escritos que fueron sometidos en fechas posteriores.

El 13 de diciembre de 1994 el licenciado Lorie Velasco y la señora Velasco sometieron a la Junta un escrito en apoyo de solicitud. Alegaron que las propiedades de la calle Clemson no servían para fines residenciales, porque su cercanía con la Avenida Piñeiro impedía el desarrollo de un ambiente tranquilo, pacífico y propicio para viviendas familiares. Específicamente, indicaron que las viviendas estaban afectadas por la contaminación ambiental producida por el tránsito vehicular en la avenida, además de que éstas recibían diariamente los efectos negativos de la alta actividad comercial adyacente. Añadieron que la rezonificación no afectaría a las familias que residen alrededor de ambos solares, porque éstos se encontraban dentro de un área físicamente accesible a la Avenida Piñeiro y se construiría una salida al ramal del Expreso Luis A. Ferré, que discurriría por su parte trasera.

El 15 de diciembre de 1994 la Asociación de Vecinos de University Gardens, Inc. presentó un escrito de oposición a la petición. En él indicó que la rezonificación solicitada atentaba contra el medio ambiente de la urbanización, ya que no propiciaba el crecimiento familiar en el área. Además, argumentó que el ramal propuesto, el cual correría desde la salida del Expreso Luis A. Ferré hacia la Avenida Piñeiro Este, amenazaría la seguridad de las personas que transitaran por dicho sector.

Por su parte, el 20 de diciembre de 1994 el Departamento de Transportación y Obras Públicas le comunicó a la Junta que no recomendaba la rezonificación de los mencionados solares, debido a que el tamaño de éstos no le permitiría cumplir con el Reglamento de Control de Acceso a las Vías Públicas de Puerto Rico.

Finalmente, el 9 de marzo de 1995 la Junta emitió una resolución en la cual aprobó la rezonificación de los solares 331 y 329(b) a un distrito comercial liviano (CL). El 14 de julio de 1995 la Junta publicó en el periódico *El Vocero de Puerto Rico* un aviso para notificar la adopción de las enmiendas al mapa de zonificación. Éstas entrarían en vigor el 31 de julio siguiente.

Inconformes con esta determinación, Carlos E. Montoto Pratts, Margarita Russis Fiallo de Montoto, José Rodríguez, John Barbosa y Myrna González presentaron ante nos, el 14 de agosto de 1995, un recurso de apelación.[1] También recurrió ante nos la Asociación de Vecinos de University Gardens, Inc. mediante un recurso de apelación presentado el 30 de agosto.[2]

Los apelantes alegaron, en síntesis, que la Junta no había cumplido con su propio reglamento, pues las notifica-

[1] Los apelantes José Rodríguez, John Barbosa y Myrna González son los respectivos dueños del condominio Columbia Plaza, localizado dentro de la urbanización University Gardens.

[2] Por tratar sobre el mismo asunto, consolidamos ambos recursos.

ciones hechas a varios residentes no fueron adecuadas por haberse enviado a una dirección errónea. Además, señalaron que no se les requirió a los proponentes de la enmienda que establecieran qué condiciones del área habían variado, ya que una solicitud similar había sido denegada anteriormente por la propia Junta.([3])

El 17 de octubre de 1995 el licenciado Lorie Velasco y su señora madre, María Velasco, presentaron ante nos una solicitud de desestimación del recurso de apelación presentado por la Asociación de Vecinos de University Gardens, Inc. Alegaron que éste había sido presentado tardíamente. Por su parte, la Asociación de Vecinos de University Gardens, Inc. presentó el 1ro de noviembre de 1995 su oposición. Por ser ésta una cuestión que se dirige a la existencia de nuestra jurisdicción, procederemos a resolverla antes de entrar en los méritos del caso.

## II

*Término para apelar de una determinación cuasi legislativa de la Junta de Planificación*([4])

Conforme a los argumentos de las partes, parece existir un conflicto entre las disposiciones de la Ley Orgánica de la Junta de Planificación de Puerto Rico (en adelante la Ley Orgánica) y la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante la L.P.A.U.) en cuanto al momento cuando empieza a correr el término para apelar una determinación cuasi legislativa de la Junta.

---

([3]) También plantearon que la enmienda hecha al mapa de zonificación constituye una zonificación aislada o *spot zoning* que contradice los principios de planificación de Puerto Rico. Por el resultado al que llegamos no es necesario discutir este último señalamiento de error.

([4]) El procedimiento para adoptar o enmendar un mapa de zonificación es de naturaleza cuasi legislativa y no cuasi adjudicativa, ya que en éste no se adjudica una controversia sino que se establece una reglamentación. *Luan Investment Corp. v. Román*, 125 D.P.R. 533, 543 (1990).

Según la Ley Orgánica,

[l]as actuaciones, decisiones o resoluciones de la Junta de Planificación en el ejercicio de sus funciones cuasi legislativas, tales como la adopción y promulgación de reglamentos y mapas de zonificación, o las enmiendas a los mismos, serán finales; Disponiéndose, que en los casos en que la Junta no cumpla con los requisitos estatutarios para la adopción y promulgación, o enmiendas a dichos reglamentos y mapas, podrá recurrirse ante el Tribunal Superior, Sala de San Juan, a impugnar el procedimiento seguido, dentro de un *término de treinta (30) días naturales, contados a partir de la publicación de los mismos.* (Énfasis suplido.) 23 L.P.R.A. sec. 63d(b).

Además, esta ley establece que las enmiendas que se efectúen a los mapas de zonificación entrarán en vigor a los quince (15) días de su publicación en un periódico de circulación general. 23 L.P.R.A. sec. 63.

Por su parte, la L.P.A.U. dispone que

[c]ualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de este Capítulo deberá iniciarse en el Tribunal Superior con competencia *dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento.* (Énfasis suplido.) 3 L.P.R.A. sec. 2127(b).

■ Tomando en consideración lo antes expuesto, según la L.P.A.U. toda persona o parte que desee apelar la determinación de la Junta tendrá treinta (30) días para solicitar la revisión judicial, contados éstos desde que entra en vigor la enmienda que es objeto de la revisión; es decir, deberá presentar la solicitud dentro de los cuarenta y cinco (45) días de haberse efectuado la publicación.

■ Debemos señalar que la L.P.A.U. es una ley posterior a la Ley Orgánica. Ésta se creó con el propósito de uniformar todo el procedimiento administrativo ante las agencias gubernamentales. Fue parte de la intención del legislador establecer "un procedimiento uniforme de revisión judicial a la acción tomada por la agencia al adoptar

un reglamento o al adjudicar un caso". Exposición de Motivos de la L.P.A.U., 1988 Leyes de Puerto Rico 825, 826.

■ Con relación a este asunto, hemos establecido que "[e]l procedimiento para adoptar o enmendar un reglamento o mapa de zonificación se rige por las disposiciones de la Ley de Planificación en la medida en que no estén en conflicto con la nueva Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". *Luan Investment Corp. v. Román*, 125 D.P.R. 533, 546 (1990).

■ También debemos tomar en consideración las enmiendas que en 1994 se le hicieran a la Ley de la Judicatura. Al amparo de la Ley de la Judicatura de Puerto Rico de 1994 vigente al momento de solicitarse la revisión, las decisiones de las agencias administrativas que se revisaban ante el Tribunal Superior, Sala de San Juan, se revisarían directamente por el Tribunal Supremo mediante un recurso de apelación. Véase el Art. 3.002(e) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(e)).

Sobre este particular resolvimos que

... los cambios experimentados por la Ley de la Judicatura de Puerto Rico con relación a la revisión de decisiones emitidas por organismos administrativos y en aras de la interpretación más adecuada de la ley actual, sólo los recursos provenientes de organismos administrativos en [sic] que en virtud de una disposición específica del estatuto orgánico se disponga que éstos serán atendidos exclusivamente por la Sala de San Juan del Tribunal Superior, cualifican para ser atendidos por el Tribunal Supremo mediante recurso de apelación. *Montalvo v. Mun. de Sabana Grande*, 138 D.P.R. 483 (1995). Véanse, además: *Farmacias Moscoso, Inc. v. K-mart Corp.*, 138 D.P.R. 497 (1995); *Maldonado v. Supte. Policía de P.R.*, 138 D.P.R. 477 (1995), y *Corp. Créd. Des. Com. Agrícola v. U.G.T.*, 138 D.P.R. 490 (1995).

En *Montalvo v. Mun. de Sabana Grande*, supra, intimamos que como las actuaciones cuasi legislativas de la Junta se revisaban con exclusividad en el Tribunal Supe-

rior, Sala de San Juan, ellas cualificaban para ser atendidas por nosotros mediante un recurso de apelación. *Montalvo v. Mun. de Sabana Grande*, supra, pág. 487 esc. 5. Adoptamos aquí ese razonamiento.

■■■ Para armonizar la Ley Orgánica, las disposiciones de la L.P.A.U. y de la Ley de la Judicatura de Puerto Rico de 1994, y tomando en cuenta la intención legislativa de uniformar los procedimientos administrativos, resolvemos que el término para revisar una determinación cuasi legislativa de la Junta es el establecido en la L.P.A.U., es decir, treinta (30) días contados desde la fecha de vigencia de los reglamentos y mapas de zonificación o sus enmiendas. A tenor de la ley aplicable al caso de autos, el recurso apropiado es el de apelación ante el Tribunal Supremo.[5]

En el caso ante nuestra consideración, las enmiendas al mapa de zonificación entrarían en vigor quince (15) días después de su publicación en el periódico, es decir, el 31 de julio de 1995. Desde esta fecha, los interesados tenían treinta (30) días para apelar la determinación de la Junta. Este periodo vencía el miércoles 30 de agosto de 1995, día cuando la Asociación de Vecinos de University Gardens, Inc. presentó su recurso ante nos. Éste no fue presentado tardíamente y no procede su desestimación.

---

[5] La Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22 *et seq.*) fue enmendada mediante la Ley Núm. 248 de 25 de diciembre de 1995. En la nueva ley se eliminaron el Art. 3.002(d) y (e) de la ley anterior, 4 L.P.R.A. sec. 22i(d)-(e), sobre el derecho de apelación de las partes de las determinaciones de una agencia administrativa ante el Tribunal Supremo.

Por su parte, la Ley Núm. 247 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i–22k, 22n–22p, 23f y 23n) enmendó la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico para eliminar todo posible conflicto con la Ley de la Judicatura de Puerto Rico de 1994, según enmendada. En lo aquí pertinente, dispuso que "[c]ualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de este Capítulo deberá *iniciarse en el Tribunal de Circuito de Apelaciones* dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá al Circuito de la región judicial donde está ubicado el domicilio del recurrente". (Énfasis suplido.) 3 L.P.R.A. sec. 2127(b).

Procederemos a discutir los demás señalamientos de error.

## III

*Requisitos exigidos por el reglamento para, enmendar un mapa de zonificación*

La Junta de Planificación es un organismo creado para proteger los intereses y el bienestar de la ciudadanía en general en el descargo de la política pública de planificación y zonificación (*E.L.A. v. Domínguez*, 104 D.P.R. 468, 470 (1975)). Dentro de la ancha encomienda de planificación integral (*The Richards Group v. Junta de Planificación*, 108 D.P.R. 23, 30 (1978)), la ley le facultó para que zonificara las distintas áreas de nuestra isla. Para ello la Rama Legislativa delegó en ella el poder de reglamentación con normas amplias y generales que le permitieran una gran discreción en el desarrollo y ejecución de la política pública sobre zonificación (*López v. Junta de Planificación*, 80 D.P.R. 646, 661 (1958)). De ahí que el Art. 16 de la Ley de Planificación, *supra*, le confiere la facultad para adoptar reglamentos fijando el uso y desarrollo por zonas o distritos de los terrenos y edificios públicos y privados .... *Luan Investment Corp. v. Román*, supra, pág. 548.

■ La Junta se estableció con el propósito de reglamentar todos los procedimientos necesarios para conseguir una uniformidad en la zonificación de nuestro país.

Por eso, ésta ... es imprescindible para resolver los problemas humanos, sociales y económicos derivados principalmente de: (1) la densidad de población en las áreas urbanas; (2) el tráfico y la circulación en el interior de la ciudad; (3) la centralización industrial e instalación de nuevas fábricas en el casco urbano; (4) la urgencia de proveer viviendas adecuadas, parques, espacios de recreación y descanso, luz y aire para la salud física y mental de los habitantes; (5) la necesidad de asegurar la armonía de conjunto y los valores estéticos de la comunidad[,] y (6) la obligación de conservar los valores históricos en las zonas antiguas. *Luan Investment Corp. v. Román*, supra, págs. 548–549.

■ Por esta razón, la Junta debe establecer procedi-

mientos claros y precisos que salvaguarden los derechos del ciudadano. Como agencia reguladora, debe velar por que los requisitos estatutarios establecidos en su reglamento se cumplan.

■ Por otro lado, la Junta tiene la facultad de preparar y adoptar los mapas de zonificación de Puerto Rico por iniciativa propia. Además, puede considerar cambios a la zonificación de algún sector o solar en específico por petición de alguna persona, funcionario u organismo. Sec. 4.04 del Reglamento de Planificación Núm. 4, *supra.*

Cuando la Junta ha denegado una petición de rezonificación, pero se solicita nuevamente un cambio en la zonificación del mismo predio, el solicitante debe demostrar que han ocurrido cambios en el área circundante al solar que ameriten una nueva zonificación. La determinación de la existencia de estos cambios es un criterio de mucho peso e importancia. La Junta debe seguir este análisis para evitar que los dueños de las propiedades cercanas se afecten directamente por el deseo personal de otro vecino. Por ello, dicha agencia exige que todo proponente de una solicitud de esta naturaleza demuestre

> ... por escrito que ha habido cambios sustanciales en las condiciones del área o sector donde radica la petición de cambio, en comparación a las existentes cuando se tomó dicho acuerdo, que amerite que la Junta considere nuevamente la solicitud. De no demostrarse los cambios en las condiciones, la Junta podrá actuar sobre la solicitud, denegándola sin que sea objeto de una nueva vista pública .... Sec. 4.06(4) del Reglamento de Planificación Núm. 4, *supra*, pág. 38.

■ Nuestra realidad social obliga al Estado a salvaguardar la zonificaciones existentes. Para lograr enmendar y alterar éstas, es necesario que el propósito de la zonificación original del área sea incompatible con el ambiente prevaleciente. De entender la Junta que las circunstancias del área donde ubica el solar que habrá de ser rezonificado han cambiado con el tiempo, ésta puede optar por permitir

la enmienda en el mapa de zonificación. De no ser así, la Junta debe mantener la zonificación original.

En el caso de autos se aprobó el cambio de clasificación de los solares de un distrito residencial general R-3 a un distrito comercial liviano (CL).

 Cuando la Junta clasifica un solar como distrito residencial general R-3, este predio está localizado en un área de densidad poblacional intermedia. Véase Sec. 13.01 del Reglamento de Planificación Num. 4, *supra.* Éste se refiere a "áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas en solares de trescientos (300) metros cuadrados o más". Íd. Al aprobarse una categoría de distrito comercial liviano (CL), la Junta ha concluido que la zona es propicia para fomentar el crecimiento de "áreas comerciales existentes o para crear nuevas áreas comerciales cuya operación resulta de baja intensidad y tolerable para el vecindario". Sec. 20.01 del Reglamento de Planificación Núm. 4, *supra.*

Por ello, cuando la Junta altera la zonificación existente y convierte los solares en un distrito comercial, está permitiendo el inevitable crecimiento de un área comercial dentro de la Urbanización University Gardens. Esto hace indispensable la adecuada notificación a todas las partes cuyos intereses puedan quedar afectados.

Es el deber de los solicitantes, en este caso Lcdo. Pelayo Lorie Velasco y su señora madre, María Velasco, demostrarle a la Junta qué cambios ha sufrido el área circundante a los solares que amerite un cambio en su zonificación. Solo de esta forma, la Junta, sopesando todos los intereses implicados en el caso, podría aprobar las enmiendas al mapa de zonificación según solicitadas. En el caso de autos no se ha cumplido con este importante requisito. Los solicitantes no han demostrado que hayan ocurrido cambios en el área circundante al lugar que ame-

riten una nueva zonificación ni la Junta ha tenido ocasión para ponderar este asunto.

■ Procederemos a analizar los requisitos de notificación establecidos en el Reglamento de Planificación Núm. 4 para determinar si la Junta cumplió con ellos.[6]

## IV

*Requisitos de notificación de propietarios dentro de un área radial de sesenta (60) metros*

■ La persona que solicite la rezonificación de un solar tiene el deber de notificar a las personas siguientes su intención de presentar dicha solicitud:

> a. Todos los dueños de aquellas propiedades que radiquen dentro de una distancia radial de sesenta (60) metros del área propuesta a rezonificarse, medida tomando los puntos más cercanos entre dicha área y cada una de las referidas propiedades.
> b. Por lo menos veinte (20) dueños de propiedades. Cuando dentro de la distancia radial indicada en el apartado (a) anterior, no existieren veinte (20) propiedades, se ampliará la misma, siempre en forma radial, hasta incluir no menos de dicho número de propiedades. Sec. 4.06(1)(a-b) del Reglamento de Planificación Núm. 4, *supra*, pág. 37.

El solicitante debe entregarle a la Junta las copias de los acuses de recibo de las notificaciones efectuadas, acompañadas, a su vez, de una declaración jurada a estos efectos. En el caso de autos, el licenciado Lorie Velasco y la señora Velasco, a través de su representante, el Sr. Emilio

---

[6] La función revisora de los tribunales, en cuanto a las actuaciones cuasi legislativas de la Junta, debe dirigirse a evaluar los factores siguientes: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación está dentro de los poderes delegados; (4) *si al aprobarse la reglamentación se cumplió con las normas procesales*, y (5) si la reglamentación es arbitraria o caprichosa. *Luan Investment Corp. v. Román*, supra, pág. 550; *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991); *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 326 (1987).

Nieves Rodríguez, le entregaron a la Junta una declaración jurada donde indicaron que "conforme [a] lo [que] dispone la Ley, [se] notifi[caron] a todos los colindantes dentro de un perímetro de 60 metros de dichos solares solar [sic] arriba indicado[s], mediante el correo con acuse de recibo".

Además, el solicitante tiene el deber de brindarle a la Junta una lista de los nombres de las personas notificadas y sus direcciones correctas y los números de propiedad del Registro de Propiedades Tributables (catastros) del Departamento de Hacienda de sus propiedades. Según surge del expediente administrativo, la solicitud presentada incluyó una lista que contenía un total de treinta y nueve (39) personas notificadas. Sin embargo, en dicha lista no se indicaron las direcciones físicas de todos los solares ni los nombres exactos de varias de las personas a las cuales se les dirigió la notificación. Del expediente surge, además, que la notificación enviada por los solicitantes a la Sra. Hilda Santiago Bonilla no fue recibida por ésta. El correo devolvió su notificación por haber sido enviada a una dirección equivocada; el número de la casa era el incorrecto.

De otra parte, el Reglamento dispone que si alguna de las propiedades colindantes está constituida por un condominio, el solicitante únicamente tiene el deber de notificarle a la Junta de Condóminos y no a todos los dueños individuales de los apartamentos de dicho edificio. Se presume que el edificio es una sola comunidad. En el caso de autos, los solicitantes le notificaron al "Administrador" del Condominio Columbia Plaza sin especificar su nombre.

De acuerdo con el expediente, la dirección a la que se envió la notificación fue la siguiente: "Sr. Administrador, Condominio Columbia Plaza, Hato Rey, P.R." Esta dirección, de su faz, resulta ser insuficiente. Por razones obvias, el correo la devolvió.

Ahora bien, la Junta tenía el deber de verificar que todos los acuses de recibo demostraran que habían sido entregados a la dirección o a la persona correcta. En el caso

de los tres (3) propietarios del condominio Columbia Plaza, éstos no recibieron notificación alguna. Del propio expediente administrativo surge que la carta enviada a nombre del Administrador nunca fue recibida. Lo mismo ocurrió en cuanto a la notificación remitida a la señora Santiago Bonilla.

Reiteramos que la Junta tiene el deber de velar por que los requisitos de notificación establecidos en su propio Reglamento sean cumplidos estrictamente. Véase *Cotto v. Depto. de Educación*, 138 D.P.R. 658 (1995). La Junta no podía aceptar la solicitud sometida por el licenciado Lorie Velasco y la señora Velasco, ya que la lista de notificación a residentes dentro del área radial de sesenta (60) metros del lugar que se acompañó estaba defectuosa.

## V

*Conclusión*

Por las razones antes expuestas, *se dictará sentencia revocando la determinación de la Junta de Planificación de enmendar la Hoja Núm. 20 del Mapa de Zonificación de San Juan, Sección de Río Piedras, para cambiar la clasificación de los solares 331 y 329(b) de la Urbanización University Gardens de un distrito residencial general R-3 a uno comercial liviano (CL), ya que ésta no cumplió con los requisitos establecidos en su propio reglamento.*

El Juez Asociado Señor Negrón García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Corrada Del Río no intervino.