José Ortiz y Gómez, y otros, peticionarios, *v.* Junta de Planificación de Puerto Rico, recurrida; Richard Clairborne Durham, recurrido, *v.* Junta de Planificación de Puerto Rico, peticionaria.

*Números:* CC-97-110      *Resueltos:* 26 de septiembre de 2000
        CC-97-119

*José R. Gómez Alegría* y *Daniel Martínez Oquendo*, abogados de la parte peticionaria; *Orlando Martínez Sotomayor*, abogado del demandante recurrido; *Gloria M. Soto Burgos, Everlidys Rodríguez Pacheco*, abogadas de la Junta de Planificación.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca decidir si a una consulta de ubicación para un desarrollo residencial extenso que se intenta llevar a cabo en una finca de más de diez (10) cuerdas ubicada en un Distrito R–O, le es de aplicación las Secs. 4.05 y 4.06 del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 4844, Departamento de Estado, 14 de diciembre de 1992 (en adelante Reglamento de Zonificación), o las Secs. 95.00, 97.00 y 97.02 de dicho reglamento. De ser de aplicación estas últimas secciones, debemos determinar si al amparo de la Sec. 97.02(3) del Reglamento de Zonificación, *supra*, es obligatorio que la Junta de Planificación de Puerto Rico celebre una vista pública con notificación a los dueños de terrenos circundantes y, a tenor del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244, Departamento de Estado, 31 de mayo de 1995 (en adelante Reglamento para Procedimientos Adjudicativos), Sec. 8.01, publique un aviso de prensa en un periódico de circulación general en Puerto Rico.

Estamos ante dos (2) recursos consolidados, uno presentado por la Junta de Planificación de Puerto Rico (en adelante la Junta) y otro por Gómez, Piñero & Asociados y el

Sr. José Orlando Ortiz. *Ortiz v. Clairborne Durham*, caso
Núm. CC-97-110; *Clairborne Durham v. Junta*, caso Núm.
CC-97-119. En ambos se solicita que revoquemos una sentencia emitida por el Tribunal de Circuito de Apelaciones
(en adelante Tribunal de Circuito), el 14 de enero de 1997.
Con el propósito de evaluar dichos recursos le concedimos
un término a las partes para que se expresaran. Con el
beneficio de sus comparecencias procedemos a resolver.

A continuación exponemos un breve resumen de los hechos pertinentes.

I

El 21 de diciembre de 1994 la firma Gómez, Piñero y
Asociados presentó ante la Junta una consulta de ubicación para un proyecto residencial multifamiliar de doscientas ochenta y cuatro (284) unidades de vivienda, distribuidas en once (11) edificios multipisos.(¹)

El proyecto se llevaría a cabo en dos (2) fincas, una con
cabida de 6.54 cuerdas y la otra con cabida de 10.71
cuerdas. Ambas están localizadas en la Carretera Estatal
Núm. 845, Km. 1.00, en el Barrio Sabana Llana del Municipio de San Juan. Consulta Núm. 94–17–1336 (en adelante la Consulta). Los terrenos son propiedad del Sr. José
Orlando Ortiz y están comprendidos dentro de un Distrito
R–O, según el mapa de zonificación vigente para San Juan.
El 8 de junio de 1995 la Junta aprobó la Consulta; la resolución fue archivada en autos y notificada a las partes el 24
de julio de 1995. En ésta se hizo constar que se utilizarían
los parámetros de diseño conformes a un Distrito R–3. Por
no ser parte en el procedimiento de la Consulta, al Sr. Richard Clairborne Durham, quien es dueño de una finca

---

(¹) Mediante Resolución de 12 de agosto de 1996, la Junta aprobó una enmienda
a la consulta de ubicación autorizando la construcción de "solamente nueve (9) estructuras con una altura máxima una de ellas de once pisos".

que queda rodeada por la finca con cabida de 6.54 cuerdas del señor Ortiz, no se le notificó esta resolución.

El 9 de agosto de 1995, el señor Clairborne Durham compareció ante la Junta y pidió la reconsideración.[2] Mediante Resolución de 29 de septiembre de 1995, notificada a las partes el 17 de octubre, la Junta denegó la reconsideración.[3] Esta resolución tampoco le fue notificada al señor Clairborne Durham. No obstante, éste se enteró del dictamen y volvió a solicitar reconsideración el 27 de octubre.

El 10 de noviembre de 1995 la Junta denegó la reconsideración. Esta resolución fue archivada en autos y notificada el 1ro de diciembre. Esta vez se le notificó la resolución al señor Clairborne Durham.

Inconforme con esta determinación, el 2 de enero de 1996, el señor Clairborne Durham presentó un recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan. A tenor con el Art. 9.004 de la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i–22k, 22n–22p, 23f y 23n), dicho recurso fue referido, mediante Orden Administrativa de 19 de junio de 1996, al Tribunal de Circuito. En su recurso de revisión alegó: que era dueño de una finca que colinda con los predios en los que se pretende construir el mencionado proyecto; que estos terrenos están localizados en un área zonificada como Distrito Residencial R–O;[4] y que el proyecto excede por mucho la

---

[2] El señor Clairborne Durham alegó que se enteró del proyecto porque el señor Ortiz informalmente le indicó de la Consulta Núm. 94–17–1336 (en adelante la Consulta) y su aprobación. Entonces él inmediatamente solicitó la reconsideración ante la Junta.

[3] La Junta de Planificación de Puerto Rico (en adelante la Junta) determinó que el señor Clairborne Durham solicitó la reconsideración en comunicación de 9 de agosto de 1995. Sin embargo, ésta no se recibió en la Junta hasta el 15 de agosto, por lo que se presentó fuera del término establecido por ley. Véase la Sec. 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2165.

[4] La Sec. 10.01 del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 4844, Departamento de Estado, 14 de diciembre de 1992, pág. 60 (en adelante Reglamento de Zonificación) dispone, en lo aquí pertinente, que:

densidad poblacional permitida por la zonificación existente. Argumentó que por tratarse de una solicitud de variación, tanto el proponente como la Junta tenían que haberle notificado la solicitud de cambio de zonificación, ya que él era un colindante dentro de la distancia radial de sesenta (60) metros del área de la propuesta rezonificación.

Luego de haber analizado el planteamiento de todas las partes el Tribunal de Circuito dictó una sentencia mediante la cual revocó la determinación de la Junta. Entendió que el proyecto de desarrollo que se pretendía conllevaba un cambio de zonificación y, por lo tanto, era de aplicación la Sec. 4.06 del Reglamento de Zonificación, *supra*, que requiere notificación a los colindantes. Le ordenó a la Junta notificar a los colindantes y cumplir con la Sec. 4.06 del Reglamento de Zonificación, *supra*.

Inconforme con esta determinación tanto la Junta como el señor Ortiz presentaron peticiones de *certiorari* ante este Tribunal. En su recurso el señor Ortiz planteó que el Tribunal de Circuito erró al resolver que en los casos de desarrollo extenso que se tramitan a tenor de lo dispuesto en la Sec. 97.00 del Reglamento de Zonificación, *supra*, que conlleven la eventual rezonificación del predio, es de aplicación lo dispuesto en la Sec. 4.06 de dicho reglamento. También planteó que dicho tribunal erró al asumir jurisdicción, ya que la moción de reconsideración del señor Clairborne Durham ante la Junta fue presentada fuera del término establecido por ley.

De otra parte, la Junta alegó en su recurso que el Tribunal de Circuito erró al concluir que el proyecto de desarrollo extenso requería un cambio de zonificación porque se

---

"Este distrito especial de baja densidad poblacional, con un solar mínimo de ocho mil (8,000) metros cuadrados, se establece para facilitar el control de la expansión o crecimiento urbano; proteger la utilidad de las vías arteriales; preservar terrenos de alta productividad agrícola; proteger áreas que requieran la preservación de su flora o fauna por su importancia económica, ecológica o científica; y proteger el disfrute y preservación de recursos de interés público tales como rasgos topográficos, bosques, arboledas, paisajes, formaciones geológicas, manantiales, quebradas, ríos, lagos, lagunas, fuentes naturales de agua, mangles, yacimientos minerales o playas."

variaba ampliamente la utilización de los espacios. Alegó, además, que dicho tribunal erró al determinar que se requería notificación a los colindantes por imperativo del debido proceso de ley o permitir su intervención, por tratarse de un caso en que se pretende establecer una zona residencial de alta densidad en un Distrito R–O.

## II

Constitucionalmente hemos reconocido la importancia que para el Pueblo representa la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales. Véase Art. VI, Secs. 14 y 19, Const. E.L.A., L.P.R.A., Tomo 1. La Junta es la agencia administrativa a la que se le ha encomendado la ingente labor de velar por la adecuada utilización de nuestros terrenos, preparando y adoptando Planes de Uso de Terrenos y Mapas de Zonificación. Éstos representan la forma visual y práctica que tiene la Junta "para llevar a cabo sus funciones dentro de una sociedad y un gobierno cada vez más complejos, un sistema abierto que confronta innumerables presiones como resultado de necesidades y aspiraciones conflictivas y que experimenta unos cambios sociales acelerados dentro de su escala reducida, escasez de terreno y recursos naturales, alta densidad poblacional y un ecosistema frágil". *Luan Investment Corp. v. Román,* 125 D.P.R. 533, 547 (1990).

En la introducción del Reglamento de Zonificación se expresa que:

[m]ediante la zonificación se establecen las normas esenciales sobre cómo y d[ó]nde deben ubicarse las múltiples actividades sociales y económicas de Puerto Rico. A través de este proceso se clasifican los terrenos en zonas o distritos y se establecen para cada uno disposiciones específicas sobre el uso

de los terrenos y sobre las obras y estructuras a permitirse.(5) Introducción, Reglamento de Zonificación, *supra*, [s.p.].

Reconociendo la necesidad de armonizar el deber del Gobierno de garantizar una adecuada utilización de los terrenos en Puerto Rico con el derecho de los ciudadanos al disfrute de su propiedad privada en una sociedad democrática, el Art. 23(a) de la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62v(a), específicamente dispone "que es política pública del Estado Libre Asociado de Puerto Rico fomentar la participación de la ciudadanía en el proceso de planificación de Puerto Rico". A estos fines le impone a la Junta el deber de proveer "a la ciudadanía de toda aquella información necesaria que coloque a todo ciudadano en una posición de igualdad para su participación efectiva en los procesos de planificación". Art. 23(b) de la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62v(b).

Con relación al uso de terreno, y precisamente para armonizar los derechos de propiedad de los ciudadanos y el poder de reglamentación del Estado, el Art. 14 de la Ley Núm. 75, *supra*, 23 L.P.R.A. sec. 62m, específicamente establece que "[t]oda obra o proyecto a ser realizado por cualquier persona o entidad deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos", según éstos aparecen en el Reglamento y los Mapas de Zonificación. En *Montoto v. Lorie*, 145 D.P.R. 30 (1998), reconocimos, dentro del contexto de una solicitud de rezonificación que, en lo posible, "[n]uestra realidad social obliga al Estado a salvaguardar la[s] zonificaciones existentes". *Montoto v. Lorie*, supra, pág. 43. Esta norma de derecho le provee al ciudadano la seguridad de que no

---

(5) El reglamento de la Junta es el instrumento que se utiliza "para clasificar y designar terrenos en zonas y distritos y la aplicación en cada zona y distrito de normas sobre el uso de terrenos y sobre las obras y estructuras a permitirse". Sec. 2.01 del Reglamento de Zonificación, *supra*, pág. 26.

se harán cambios que afecten su derecho propietario a sus espaldas, sin su conocimiento y sin brindarle la oportunidad de exponer su opinión sobre el cambio propuesto.

■ Una consulta de ubicación es un procedimiento que se lleva a cabo ante la Junta "para que [ésta] evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren.... Esta consulta se identifica como pública o privada dependiendo de quién la origine e incluye los proyectos de desarrollos extensos a considerarse bajo las disposiciones de las Secciones 95.00, 96.00 y 97.00 [del] Reglamento [de Zonificación]".[6] Sec. 2.01 del Reglamento de Zonificación, *supra*, pág. 10.

■ De otra parte, un desarrollo extenso residencial es un desarrollo "para veinte (20) o más familias o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) personas: treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas y cuarenta (40) o más familias o solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas conforme a los resultados del último Censo Poblacional, o el desarrollo de facilidades comerciales, industriales, institucionales o recreativos que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados". Sec. 2.01, Reglamento de Zonificación, *supra*, pág. 11.

■ Cuando la Junta evalúa un proyecto de desarrollo residencial extenso viene obligada a tomar en conside-

---

[6] Sec. 2.01 del Reglamento de Zonificación, *supra*. Definición similar se establece en la Sec. 2.00,6 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244, Departamento de Estado, 31 de mayo de 1995.

ración, entre otros, el siguiente factor: la conformidad del uso propuesto con el Plan de Uso de Terrenos hasta donde éste haya sido adoptado y estudiado para la zona de que se trate. Sec. 95.03,1 del Reglamento de Zonificación, *supra*.

Es con estas normas y principios generales en mente que debemos analizar los planteamientos de las partes.

## III

Por tratarse de un planteamiento de naturaleza jurisdiccional discutiremos, en primera instancia, la alegación de falta de jurisdicción por haberse presentado la moción de reconsideración tardíamente ante la Junta.

A la luz de lo establecido en *Asoc. Residentes v. Montebello Dev. Corp.*, 138 D.P.R. 412 (1995), concluimos que no les asiste la razón a los peticionarios. En dicho caso expresamos que "la intervención es el mecanismo procesal para que una persona, que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa". Íd., pág. 420. Con respecto al término para solicitar la reconsideración puntualizamos que si bien es de naturaleza jurisdiccional, no podemos olvidar que éste aplica sólo a quienes son formalmente parte. La doctrina esbozada en dicho caso es de aplicación al caso de autos.

Alegan los peticionarios además que, por tratarse de un desarrollo residencial extenso, y no estar dentro de los parámetros de la Sec. 4.05 del Reglamento de Zonificación, *supra*, no se necesitaba llevar a cabo una rezonificación. Ello, a pesar de que el proyecto que se iba a realizar en un área clasificada como Residencial R–O, excede por mucho la densidad permitida en esta zonificación. Plantean, además, que no es de aplicación a la situación ante nuestra consideración la Sec. 4.06 del Reglamento de Zonificación, *supra*. Entienden, además, que por ser un desarrollo resi-

dencial extenso es de aplicación la Sec. 97.02 del Reglamento de Zonificación, *supra.* Este inciso dispone:

> *Se celebrará vista pública con notificación a los dueños de los terrenos circundantes cuando el desarrollo residencial extenso tenga acceso a una calle municipal a la que den frente más de diez (10) estructuras residenciales en una distancia de doscientos cincuenta (250) metros, medidos desde las entradas al proyecto, y siempre que la densidad propuesta sea mayor que la del área circundante.* (Énfasis suplido.) Sec. 97.02,3 del Reglamento de Zonificación, *supra.*

Interpretan también, que el inciso 3 de dicha sección dispone que sólo será obligatoria la celebración de vista pública cuando se dan los dos factores que allí se esbozan.

No les asiste la razón a los peticionarios en su análisis del derecho aplicable. Veamos.

En el caso de autos, el peticionario señor Ortiz solicitó una consulta de ubicación, ya que el proyecto que deseaba llevar a cabo, proponía usos de terrenos no permitidos ministerialmente de acuerdo con su zonificación. Sec. 2.01 del Reglamento de Zonificación, *supra.* A tenor de las disposiciones de la Sec. 4.05 del Reglamento de Zonificación, *supra*, por su tamaño, tampoco cualificaba para un cambio de zonificación. Ahora bien, el proyecto sí cualificaba como uno de desarrollo residencial extenso de acuerdo con las Secs. 95.00 y 97.00 del Reglamento de Zonificación, *supra.*

El inciso 3 de la Sec. 95.02 del Reglamento de Zonificación, *supra*, en relación con proyectos de desarrollo residencial extenso, establece dos (2) circunstancias en las cuales es obligatorio que la Junta celebre vistas públicas con notificación a los dueños de terrenos circundantes. La primera es cuando el proyecto tenga acceso a una calle municipal bajo las condiciones allí descritas. Y, la segunda, que es de aplicación al caso de autos, siempre que la densidad propuesta sea mayor que la del área circundante. Esta interpretación no sólo le insufla vida a la política pública de "fomentar la participación de la ciudadanía en el

proceso de planificación" esbozada en la propia Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. sec. 62v, sino que establece un balance entre el poder del Estado para velar por la adecuada utilización de los terrenos y el derecho de los ciudadanos al libre disfrute de sus propiedades. Además, fomenta la confianza del Pueblo en que las zonificaciones de las áreas donde tienen sus hogares no serán alteradas a sus espaldas y sin brindarles la oportunidad de que los funcionarios públicos a cargo del proceso tomen en consideración sus puntos de vista.

De otra parte, la Sec. 2.00,27 del Reglamento para Procedimientos Adjudicativos, *supra*, pág. 2–10, define "vistas públicas" como unas "para considerar consultas de ubicación u otra acción adjudicativa de la Junta en todos los casos en que se disponga por ley o reglamentación o para aquellos casos en que la Junta lo estime pertinente". La Sec. 8.00 de dicho reglamento, a su vez dispone que "[s]i se tratare de una vista pública, la Junta publicará un aviso de prensa en un periódico de circulación general en Puerto Rico con no menos de quince (15) días de antelación a la fecha de la vista". Reglamento para Procedimientos Adjudicativos, *supra*, Sec. 8.01, pág. 8–2.

En el caso de autos se trataba de una consulta de ubicación de un desarrollo residencial extenso para la cual el Reglamento de Zonificación exige que se lleven a cabo vistas. La Junta venía obligada a publicar un aviso en la prensa. No cumplió con este importante requisito. Más aún, ni siquiera le notificó a los colindantes ni les permitió comparecer como interventores.

Por las razones antes expuestas, *se expiden los autos de "certiorari" solicitados. Y, conforme a los fundamentos anteriormente enunciados, se confirma la determinación del Tribunal de Circuito de Apelaciones de revocar la determinación de la Junta de Planificación de aprobar la consulta de ubicación solicitada y de no permitir la intervención del señor Clairborne Durham en el proceso de consulta. Ade-*

*más, se ordena a que, una vez sea devuelto el caso a la Junta, se continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Hernández Denton se inhibió.