EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por el SEÑOR PRESIDENTE DE LA JUNTA DE PLANIFICACIÓN DE PUERTO RICO, LIC. RAFAEL ALONSO ALONSO, demandante y recurrente, *v.* PEDRO A. DOMÍNGUEZ, demandado y recurrido.

Número: R-75-177          Resuelto: 17 de diciembre de 1975

*Belén Bazán de Pagán, Héctor Nieves Cuevas* y *Benjamín Soto Maldonado,* abogados del recurrente; *Kenneth Marty López,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

Pedro A. Domínguez, demandado-recurrido, tiene y mantiene en su residencia alrededor de doce aves que incluyen gallos, gallinas y pollos y que utiliza para consumo propio. Tras una inspección realizada por los inspectores de la oficina regional de Guayama de la Junta de Planificación, que reveló la existencia de aves sueltas en el patio de la residencia de Domínguez, el Estado Libre Asociado de Puerto Rico a través de la Junta solicitó un *injunction* contra Domínguez para que se le prohibiera tener una crianza de aves en un distrito residencial R-3 en violación de las leyes y reglamentos de la Junta.[1] Domínguez admitió el tener las mencionadas aves, pero negó violación de ley o reglamento alguno.

El tribunal de instancia declaró sin lugar la demanda de la Junta por entender que no se había cometido violación a las leyes y reglamentos de la Junta. A petición de la Junta acordamos revisar.

La cuestión a resolver es si la tenencia de doce aves en el patio de una residencia en un distrito residencial R-3, que comprende solares con un área de 300 metros cuadrados o más, constituye una crianza avícola y por lo tanto un uso reservado únicamente a fincas localizadas en áreas no urbanizadas y en distritos R-1[2] y con una superficie de cinco cuerdas o más.[3]

---

[1] Reglamento de Planificación Núm. 4, sec. 9.00 (1969) ; 23 R.&R.P.R. secs. 9–121 a 9–137.

[2] *Id.* sec. 54.03(17) (a), 23 R.&R.P.R. sec. 9–1113(17) (A).

[3] *Id., supra,* escolio 2.

470

La Junta de Planificación se creó con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico fomentando el bienestar general de los ciudadanos y la eficiencia en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas. *Heftler International, Inc.* v. *J. de P.*, 99 D.P.R. 467, 470 (1970). A esos fines la Junta aprobó, entre otros, el Reglamento Núm. 4 de 1969, en el que consigna su propósito de guiar el uso y desarrollo de los terrenos y edificios para asegurar y fomentar la salud, seguridad, moral, orden, conveniencia, prosperidad, estabilidad económica y bienestar general de los presentes y futuros habitantes de Puerto Rico. Reglamento de Planificación Núm. 4, sec. 1.02 (1969); 23 R.&R.P.R. sec. 9–2. El referido reglamento, también conocido como el Reglamento de Zonificación, provee que en los distritos residenciales R-3 [4] los edificios, solares, estructuras o combinaciones de éstos se usarán para los siguientes fines:

A. casas de una o dos familias;

B. casas en hilera;

C. casas de apartamientos, y;

D. otros usos de acuerdo con lo establecido en la Sec. 54.03 del Reglamento. Reglamento de Planificación Núm. 4, sec. 9.02 (1969); 23 R.&R.P.R. sec. 9–122.

En adición a los usos permitidos por la Sec. 9.02, *supra*, para solares en distritos residenciales R-3, el Reglamento, en su Sec. 54.03, permite a la Junta autorizar, por vía de excepción y en armonía con los fines y propósitos generales de dicho reglamento, ciertos usos que allí se mencionan siempre que: por medio del diseño, la construcción y la operación, se haya

---

[4] La Sec. 9 del Reglamento de Zonificación define el distrito residencial R-3 como aquél de densidad poblacional intermedia que se establece para clasificar áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas en solares de 300 metros cuadrados o más. Reglamento de Planificación Núm. 4, sec. 9.01 (1969); 23 R.&R.P.R. sec. 9–121.

de proteger la salud, la seguridad y el bienestar de los ocupantes de las propiedades limítrofes; no se menoscabe el suministro de luz y aire a la edificación a ocuparse o a los vecinos; no se aumente el peligro de fuego; no se ocasione reducción o perjuicios a los valores de las propiedades establecidas en las áreas vecinas, y; estos proyectos reúnan cualquier otro requisito que se estime conveniente para asegurar la debida protección al interés público y cumplan con los demás requisitos establecidos para el distrito específico en que ubiquen. 23 R.&R.P.R. sec. 9–1113; *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87 (1974); *López* v. *Junta Planificación*, 80 D.P.R. 646, 663 (1958).

La crianza avícola es uno de los usos que por excepción puede autorizar la Junta en distritos residenciales conforme lo establece la Sec. 54.03, *supra;* pero dicha autorización está restringida a aquella crianza avícola que se lleve a cabo en solares de cinco cuerdas o más ubicados en distritos R-1 y situados en áreas no urbanizadas. Reglamento, *supra,* sec. 54.03(17)(a); 23 R.&R.P.R. sec. 9–1113(17)(A). El distrito residencial a que se contrae este pleito es R-3, de densidad poblacional intermedia y solares de 300 metros cuadrados o más. Es evidente que en dichos distritos está proscrita la crianza de aves pues por el limitado tamaño de los solares que estos distritos comprenden no cualifica para los otros usos a que se refiere la Sec. 54.03 del Reglamento.

No hemos podido encontrar en el Reglamento ninguna prohibición expresa a la tenencia de aves o animales en los distritos residenciales. La prohibición resulta ser implícita al limitar las crianzas de aves a extensiones de cinco cuerdas o más. Aun en los distritos residenciales en que se permiten las crianzas avícolas y de otros animales el Reglamento exige tomar en cuenta la protección de la salud, la seguridad y el bienestar de los ocupantes de la propiedad a utilizarse o los de las propiedades limítrofes. Dentro de esas normas generales la Junta puede hacer las determinaciones que crea apropia-

das, por estar dentro del ámbito de sus facultades el velar por que se observen las normas expresadas en sus reglamentos. Ante los hechos de este caso y demás circunstancias concurrentes la Junta concluyó que las doce aves que tenía el recurrido en el patio de su casa constituían una crianza no permitida en distritos residenciales R-3 y estimó solicitar del tribunal, al amparo de la Sec. 35 del Título 23 de las Leyes de Puerto Rico Anotadas, que prohibiera al recurrido utilizar su propiedad para la crianza de aves por constituir tal uso una violación a sus reglamentos. El tribunal de instancia declaró sin lugar la demanda de *injunction* de la Junta.

Debemos señalar que de acuerdo con el Reglamento el área que puede ocupar una residencia y sus estructuras accesorias puede ser hasta el 50% del área del solar teniendo en cuenta que las estructuras pueden ser erigidas con sólo dos metros de separación lateral de la colindancia del solar vecino. En cuanto al patio posterior, éste no puede acercarse a menos de tres metros a la colindancia con la propiedad posteriormente limítrofe. Es en esa estrecha franja de patio en la que Domínguez tiene las aves en cuestión. No es difícil imaginarse el ruido del cacareo de las aves, la pestilencia resultante, las consiguientes moscas, mosquitos, cucarachas y hasta ratones que genera o son atraídos por la combinación de factores que entran en juego en una crianza de aves. Reglamento, *supra*, Secs. 9.06, 9.09, 9.10; 23 R.&R.P.R. secs. 9–126, 9–129, 9–130.

■ Es función ineludible de la Junta la de establecer los criterios generales de salud y bienestar tanto de los ocupantes de la propiedad en cuestión como los de las propiedades vecinas. No es poco común que aun en la propia casa en que se mantienen aves y animales haya discrepancias de criterio en cuanto a la conveniencia de tenerlos. Mucho más frecuente son las quejas de los vecinos por las molestias y perjuicios ocasionados por las aludidas crianzas de aves en zonas residenciales y solares pequeños como el envuelto en este caso.

No son infrecuentes las ocasiones en que los vecinos se abstienen de quejarse en ánimo de no arriesgar la convivencia tranquila y pacífica con sus vecinos, teniendo que tolerar pacientemente las incomodidades e inconveniencias resultantes. De proliferarse esta situación en los distritos residenciales, que constituyen las grandes urbanizaciones urbanas, se expondrá la salud, la tranquilidad, la paz y el sosiego de la población.

La zonificación se aparta radicalmente de los conceptos tradicionales del derecho privado. Se le prohíbe a veces a un ciudadano dedicar su propiedad a propósitos corrientemente reconocidos como útiles y aun inofensivos. Tal restricción ha sido motivada por el aumento constante en la densidad de nuestra población urbana y las crecientes complejidades de nuestra civilización. *Heftler International, Inc.* v. *J. de P.,* supra, 471; *E.L.A.* v. *Márquez,* 93 D.P.R. 393, 401 (1966); *Roselló Hnos.* v. *Figueroa,* 78 D.P.R. 261, 273 (1955). El principio de que uno no puede usar su propiedad en perjuicio del derecho de otro ha adquirido una mayor contundencia en estos tiempos. De no ser así la vida en nuestros centros poblacionales congestionados sería intolerable e insoportable. Los ciudadanos deben recibir la protección del Estado contra el hostigamiento injusto que surge del uso que su vecino le dé a su propiedad. De otro modo así el confort y el valor de su hogar podría ser fácilmente destruido por uno que decidiera poner un estorbo cercano, y nadie estaría seguro, a menos que fuera lo suficientemente rico para comprar suficiente terreno alrededor de su casa para que la molestia desapareciera.

La Junta de Planificación no abusó de su discreción bajo el Reglamento al considerar que tener doce aves en una propiedad situada en un distrito R-3 constituye un uso ilegal bajo las disposiciones del Reglamento que sólo autorizan la crianza de aves en aquellas propiedades de cinco cuerdas o más.

Erró el tribunal de instancia al declarar sin lugar la petición de *injunction* de la Junta de Planificación contra el peticionario. *Se revocará la sentencia dictada por el Tribunal Superior, Sala de Guayama, en el caso civil 74-1032, El Estado Libre Asociado de Puerto Rico, etc. v. Pedro A. Domínguez, y se ordenará la expedición del injunction solicitado para que el demandado-recurrido descontinúe la crianza ilegal de aves en su propiedad.*